IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-331-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

NATHANIEL DAVID CORSER,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Peter McNeilly, Assistant United States Attorney for the District of Colorado, and the defendant, Nathaniel David Corser, personally and by counsel, David Andrew Kraut, Assistant Federal Public Defender, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.    AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to

(1)    plead guilty to Count 2 of the Indictment, charging a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Distribution of a Mixture or Substance Containing a Detectable Amount of Fentanyl Resulting in Death;

(2)    waive certain appellate and collateral attack rights, as explained in detail below; and

(3)    agree not to contest forfeiture as more fully described below.

COURT EXHIBIT

21-cr 00331

**B.  Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(C) and the parties agree that 240 months imprisonment, followed by three years of supervised release, is the appropriate disposition in this case. The parties understand that, once the Court accepts the plea agreement, the Court is required to enter the above-described sentence. The parties further understand that, if the Court informs the parties it intends to impose a sentence different from the above-described sentence, either party has the right to withdraw from the plea agreement.

The government further agrees to move to dismiss Counts 1 and 3 through 9 of the Indictment with prejudice. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

**C.  Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)     the sentence exceeds 240 months; or

(3)     the government appeals the sentence imposed.

If either of these two criteria apply, the defendant may appeal on any ground that is properly

available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this

prosecution, conviction, or sentence (including the restitution order) in any collateral attack

(including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision

does not prevent the defendant from seeking relief otherwise available in a collateral attack on

any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the
        sentencing guidelines or sentencing statute;

(2)      the defendant was deprived of the effective assistance of counsel; or

(3)      the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the

Guideline range upon a revocation of supervised release in this case number, except where the

defendant unsuccessfully objects to the grade of violation applied by the court during the district

court revocation proceedings. In that event, this waiver does not apply and the defendant may

appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls

below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18

U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a

sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This

waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district

court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly

establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

   **D.  Forfeiture of assets**:

   The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to

the United States immediately and voluntarily any and all assets and property, or portions

thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of

the United States, the defendant, the defendant's nominees, or elsewhere. The defendant agrees

and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or

administrative forfeiture action. The defendant understands that, pursuant to 18 U.S.C. § 983, the

seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been

advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives

his rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the

property returned to him if notice is not sent within the prescribed time frames. The defendant

further agrees to the forfeiture of any substitute assets up to the value of any property described

above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

   Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine,

restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant

in addition to forfeiture.

   The defendant agrees that the below-described property, which was seized from the

defendant for evidentiary purposes, and which is currently in the custody or control of the

Federal Bureau of Investigation or the Colorado Springs Police Department, was lawfully seized

and that it is evidence, contraband, or fruits of the crimes to which the defendant is pleading

guilty. The defendant, as sole and rightful owner, relinquishes and abandons all claims, title, and

interest the defendant has in such property with the understanding and consent that the Federal

Bureau of Investigation or the Colorado Springs Police Department may dispose of the property

without further obligations. The specific property includes: a FN Model 503

semi-automatic 9mm handgun bearing serial number CV018486 and ammunition.

## II.     ELEMENTS OF THE OFFENSE

The parties agree the elements of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Distribution of a

Mixture or Substance Containing a Detectable Amount of Fentanyl Resulting in Death are as

follows[1]:

*First*: The defendant knowingly or intentionally distributed a controlled substance as

charged;

*Second*: The substance was in fact a mixture or substance containing a detectable amount

of fentanyl, a Schedule II controlled substance; and

*Third*: Death resulted from use of the mixture or substance containing a detectable

amount of fentanyl.

## III.     STATUTORY SENTENCE

The statutory sentence for a violation of Count 2 of the Indictment is: not less than 20

years and not more than life imprisonment; not more than a $1,000,000 fine; not less than three

years and not more than a lifetime of supervised release; and a $100 mandatory victim's fund

assessment fee.

---

[1] Tenth Circuit Pattern Jury Instruction 2.85.1 (2021).

### IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the government would be able to prove the following facts at trial.

*The Defendant Distributes Fentanyl Which Kills K.N.*

On July 4, 2021, the defendant met a 19-year-old man with the initials K.N. at Cottonwood Creek Park in Colorado Springs, Colorado, for a drug deal they had arranged through text messages. At the park, the defendant dealt K.N. two blue pills with imprints which said "M" and "30." Although the pills appeared to be prescription oxycodone pills, they actually contained fentanyl.

Over the course of the next day, K.N. ingested both pills. Late in the morning on July 5,

K.N.'s aunt discovered K.N. dead in his bedroom. She called 911 and began chest compressions. A short time later, an El Paso County Sheriff's Deputy and members of the Falcon Fire Department responded to the aunt's residence and attempted to revive K.N., but they were unsuccessful and stopped life saving measures at 12:07 p.m.

The El Paso County Coroner's Office conducted an autopsy on K.N. on July 6, 2021. The only controlled substances present in K.N.'s body during the autopsy were fentanyl and THC. The doctor who conducted the autopsy opined K.N. died as a result of "fentanyl intoxication."

### *The Defendant Sells Fentanyl Pills to an Undercover Officer*

After K.N.'s death, his mother let Colorado Springs Police Department (CSPD) officers know she had found text messages on K.N.'s phone which appeared to relate to K.N. purchasing the pills which killed him on July 5. The text messages were between K.N. and the defendant. The messages showed the defendant sold K.N. various controlled substances in several transactions over the course of at least a month before K.N. died.

A CSPD detective used K.N.'s phone to communicate with the defendant, acting as if K.N. was still alive and wanting to buy five pills which he described as "30s" (the same term K.N. had used when he asked to purchase pills on July 4). The original aim of the operation was to have the defendant come to a pre-arranged meet location and then arrest him in possession of the pills. The defendant, however, refused to come out of his apartment to conduct the deal and demanded the person he believed to be K.N. come to his apartment to buy the pills. The defendant provided his address, including apartment number. His stated reason for not coming outside to do the deal was, "I don't do bussiness outside there are cameras and the fbi probation building is the next one Over so you gonna have to come to my door." The CSPD detective

explained K.N. could not come to the door because his foot was messed up. The defendant

responded, "Well send someone in for you idk what to tell you I'm not finnaget busted for sellin

5 FUCCING PILLS."

Because of the defendant's refusal to do the deal anywhere besides his apartment and his

suggestion that K.N. could send someone else to pick up the pills, a CSPD detective posed as a

friend of K.N. and went to the defendant's apartment to conduct the deal. When the detective

knocked on the door, the defendant answered and asked the detective, "Do I know you?" The

detective told the defendant K.N. had sent him. The defendant walked back into his apartment

and retrieved a zip-top baggie with five blue pills in it. The defendant threw the pills on the floor

just inside the front door and asked for $100. The detective threw $100 in cash on the ground and

picked up the baggie. After the detective picked up the pills, the defendant closed the door and

the detective walked away.

The CSPD Metro Crime Lab tested the five blue pills and determined they contained

fentanyl.

*Search of the Defendant's Apartment*

On July 15, 2021, members of the CSPD Tactical Enforcement Unit (TEU) and

detectives assigned to CSPD Metro Vice Narcotics and Intelligence (MVNI) executed a search

warrant on the defendant's apartment at 320 East Bijou Street, Apartment 2, Colorado Springs,

Colorado. Police arrested the defendant, who was present when the search warrant was executed.

During the execution of the search warrant, detectives located the following items of

evidentiary value:

- 1,089 dosage units of Morphine Sulfate 30mg pills packaged in 13 small zip-top baggies with crosses on them, and a prescription bottle which was unrelated to the morphine pills;

- 108 dosage units of Fentanyl Buccal Tablets 200 mcg in the manufacturer's packaging;

- Two blue tablets with "M" and "30" imprinted on them, which contained fentanyl;

- One FN, Model 503 semi-automatic 9mm handgun, loaded with 8 rounds of ammunition, located near the illegal narcotics; and

- A magazine loaded with 9mm ammunition.

Most of the controlled substances were located inside of a backpack in an open gun safe in the bedroom closet. The loaded handgun was located a few feet away, under the bed in the bedroom. Corser was the only resident of the one-bedroom apartment.

*Summary of Culpability for Count 2*

The defendant knowingly and intentionally distributed pills to K.N. which the defendant believed contained a controlled substance. The pills the defendant distributed contained a detectable amount of fentanyl, a Schedule II controlled substance. K.N.'s death resulted from use of the mixture or substance containing a detectable amount of fentanyl.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under

advisory guidelines issued by the United States Sentencing Commission. In order to aid the

Court in this regard, the parties set forth below their estimate of the advisory guideline range

called for by the United States Sentencing Guidelines. To the extent that the parties disagree

about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an

estimate. The parties understand that the government has an independent obligation to assist the

Court in making an accurate determination of the correct guideline range. To that end, the

government may argue that facts identified in the presentence report, or otherwise identified

during the sentencing process, affect the estimate below.

a)   Under USSG §2D1.1(a)(2), the base offense level is **38** because the defendant is convicted under 21 U.S.C. § 841(b)(1)(C) and the offense of conviction establishes that death resulted from the use of the substance.

b)   Because the defendant possessed a dangerous weapon—specifically, a firearm—the offense level should be **increased by 2 levels**, pursuant to USSG §2D1.1(b)(1).

c)   There are no victim-related, role-in-offense, obstruction, grouping, and/or multiple-count adjustments.

d)   The adjusted offense level is **40**.

e)   Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a **2-level reduction** for acceptance of responsibility pursuant to USSG §3E1.1(a) and agrees to file a motion requesting that the defendant receive a **1-level reduction** for acceptance of responsibility pursuant to USSG § 3E1.1(b). With these adjustments, the resulting total offense level is **37**.

f)   The parties understand the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category **III**.

g)   The career offender/criminal livelihood/armed career criminal adjustments do not apply.

h)   The advisory guideline range resulting from these calculations is **262 – 327 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 240 months (statutory mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(C)) to life (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

i)   Pursuant to guideline §5E1.2 and 21 U.S.C. § 841(b)(1)(C), assuming the estimated offense level above is correct, the fine range for this offense would be **$40,000 to $1,000,000**, plus applicable interest and penalties.

j)   Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term **at least three years, but not more than life**.


## VII.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.


Date: 8/25/22

Nathaniel David Corser
Defendant

Date: 8/25/22

David Andrew Kraut
Attorney for Defendant

Date: 8/31/22

Peter McNeilly
Assistant U.S. Attorney


Page 11 of 11